No. 82,404

In the Matter of MITCHELL B. CHRISTIANS, *Respondent.*

(978 P.2d 910)

Opinion filed April 16, 1999.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause for petitioner.

*Wm. Rex Lorson*, of Salina, argued the cause for respondent, and *Mitchell B. Christians*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent Mitchell B. Christians of Salina, an attorney admitted to the practice of law in the state of Kansas. A formal hearing was held before a panel of the Kansas Board of Discipline of Attorneys. Respondent appeared pro se. The panel made the following findings of fact and conclusions of law:

"FINDINGS OF FACT

. . . .

"2. In late summer, 1992, Complainant Ken Fisher, hired Respondent to file a Chapter 7 bankruptcy for him. Mr. Fisher testified that he gave Respondent information about his creditors and income, and $95.00 for the filing fee. Later Mr. Fisher paid Respondent three installments of $50 each and performed some tree trimming work to cover Respondent's fee. At the time he first asked Respondent to file the bankruptcy, Mr. Fisher was divorced, had numerous creditors and was paying $200 a month for child support. After garnishment for the child support, Mr. Fisher was left with $68 for a two week period.

"3. Respondent did not file the bankruptcy for Mr. Fisher, even tho[ugh] Mr. Fisher called and met with him many time[s] over the period from late 1992 until 1995 to discuss the several creditor lawsuits, to consult with him about letters and legal notices he received from creditors about unpaid bills and about court dates, and to discuss other legal matters including a suit arising from an auto accident, and the adoption of his child. Respondent and Complainant both testified that Respondent's advice about the creditors was that the bankruptcy proceeding would handle their claims. Subsequently, one of his creditors, Memorial Hospital, obtained a default judgment against Mr. Fisher, when he did not appear at hearing. Respondent had advised Mr. Fisher that he did not need to defend against the lawsuit, or obey court orders to appear, because the bankruptcy would discharge the debt. Consequently, Mr. Fisher was arrested and jailed for failure to

respond to a court order. He was embarrassed at his place of employment when officers arrested him and he had to spend part of a day in jail. After the arrest, Mr. Fisher continued to seek help from Respondent, and Respondent continued to tell him that the bankruptcy proceeding would take care of the debt. When Mr. Fisher was summoned to court October 24, 1995, Respondent did not provide bankruptcy documentation as Mr. Fisher requested, or attend the hearing with Mr. Fisher, even tho[ugh] Mr. Fisher met with him shortly before the hearing. Respondent never admitted to Mr. Fisher that he had not filed the bankruptcy. So when Mr. Fisher appeared before Judge Anderson, Mr. Fisher told the judge that his attorney said he filed the bankruptcy, but apparently he was now not sure what to believe. After the hearing, Mr. Fisher was unsuccessful in getting in touch with Respondent.

"4.   Mr. Craig Crosswhite is the creditor['s] attorney who wrote Mr. Fisher about the Memorial Hospital bill. Mr. Fisher showed Mr. Crosswhite's letters to Respondent. Mr. Crosswhite testified that he pursued Mr. Fisher for payment until Mr. Fisher told him that Respondent was handling his bankruptcy. Then Mr. Crosswhite wrote Respondent, and he searched court records for evidence of a bankruptcy filing. There was none. Even after Mr. Crosswhite left messages about Mr. Fisher on Respondent's answering machine, Respondent never called Mr. Crosswhite back.

"5.   Mr. John Gatz is the attorney who investigated the complaint for the Disciplinary Administrator's office. Respondent told Mr. Gatz he was delaying the bankruptcy filing until Mr. Fisher got a steady job or his income otherwise stabilized. Until that happened, Respondent reasoned that the creditors had nothing to garnish. Yet the Memorial Hospital default judgment did result in garnishment of Mr. Fisher's wages although the child support payment took up the bulk of the wage. Ms. Bonnie Selby is the attorney who finally filed Mr. Fisher's bankruptcy in 1996. Mr. Fisher sought her help after he couldn't get Respondent to help him with the court appearance before Judge Anderson. She filed the bankruptcy after she was unable to reach Respondent although she left several messages on his answering machine.

"6.   Respondent explained to the Panel that he waited to file Mr. Fisher's bankruptcy, thereby discharging the debts, until Mr. Fisher had steady income because bankruptcy can be filed only once in a seven year time period. He never explained this theory to Mr. Fisher. Respondent testified that during 1992 and 1993 he himself was experiencing several problems: He moved out of the apartment he shared with his wife. He and his wife divorced, a small claims court judgment for unpaid rent on his estranged wife's apartment was taken against him. He left an office sharing arrangement, and started conducting his practice from his home. He began traveling around a several county area handling criminal appointments. Respondent admitted not returning calls from Mr. Crosswhite or Ms. [Selby] either because he didn't have time or didn't know the call concerned Mr. Fisher. Recently, Respondent closed his private practice and is working as a Public Defender in Salina, Kansas. When Mr. Hazlett questioned Respondent

about the money Mr. Fisher paid him for the filing fee and attorney fee, Respondent stated he put the money in his general account, not a trust account.

### "CONCLUSIONS OF LAW

"The panel unanimously finds, by clear and convincing evidence, that Respondent violated Kansas Rules of Professional Conduct [KRPC 1.1 (1998 Kan. Ct. R. Annot. 279) (competence); KRPC 1.3 (1998 Kan. Ct. R. Annot. 288) (diligence); KRPC 1.4 (1998 Kan. Ct. R. Annot. 296) (communication); KRPC 1.15 (1998 Kan. Ct. R. Annot. 333) (safekeeping property); and KRPC 8.4 (1998 Kan. Ct. R. Annot. 386) (misconduct)]. Respondent did not follow his client's request to file the bankruptcy, did not admit to his client that it had not been filed, did not protect his client from his creditors and took money for the filing fee and did not keep it segregated in a trust account. Despite Respondent's remarks to the contrary, the Panel finds that Respondent continuously represented to Mr. Fisher the bankruptcy was filed. Even after Mr. Fisher was arrested on a bench warrant, Respondent did not truthfully tell his client or the court that there was no bankruptcy on file. A simple phone call to the creditor would have helped Mr. Fisher, at minimal cost to Respondent."

The respondent filed no exceptions to the panel's findings of fact and conclusions of law. We accept and concur in the panel's findings and conclusions.

We now determine the appropriate discipline to be imposed. The panel analyzed the situation and recommended discipline as follows:

### "RECOMMENDED DISPOSITION

. . . .

"In making its recommendations for discipline, the Panel has reviewed the ABA Standards for Imposing Lawyer Sanctions. The factors to be considered include the following: 1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; 2) whether the lawyer acted intentionally, knowingly or negligently; 3) the amount of the actual or potential injury caused by the lawyer's misconduct; and 4) the existence of aggravating or mitigating factors.

"In this case, Respondent violated his duty to represent competently his client's interests and damaged the profession by his misconduct. Respondent's actions (or rather inactions) were knowingly pursued. His client was injured by the loss of the fee and money he gave Respondent, and further by his arrest on a bench warrant.

"We must then turn to the ABA Standards on Aggravation and Mitigation to determine whether any factors present either increase or reduce the nature and extent of discipline to be imposed.

1. Aggravating factors. The Panel has consider[ed] the following factors applicable to this matter: a, h, I, and j.

    a. Prior disciplinary offenses. Respondent was informally admonished on April 10, 1996 for violating KRPC 1.4.

    h. Vulnerability of the victim. Mr. Fisher was unsophisticated in bankruptcy matters and trusted Respondent's professional expertise.

    I. Substantial experience in the practice of law. Respondent is a 1987 graduate of law school and admitted to practice and should have been knowledgeable of bankruptcy matters.

    j. Indifference to making restitution. Respondent did not make a timely offer of restitution.

2. Mitigating factors. Respondent has pointed out factors b, e, and I, as applicable to his situation.

    b. Absence of a dishonest or selfish motive. Respondent professes he did not intend to gain from this misconduct.

    e. The present and past attitude of the attorney as shown by his or her co-operation during the hearing and his or her full and free acknowledgement of the transgressions. Respondent believes his testimony shows his good faith effort to cooperate with the Disciplinary Administrator.

    I. Respondent referenced his divorce as applicable to this situation.

"After reviewing all of these factors, the Panel recommends that Respondent be suspended from the practice of law for [a] period of six (6) months. Further Respondent should make restitution to Mr. Fisher in the amount of $547.00 consisting of the $95.00 filing fee, $400.00 attorney fee, and $52. ($6.50 x 8) for lost wages."

The panel heard this case on December 16, 1997. The panel's report is dated December 7, 1998.

At the hearing before us, the Disciplinary Administrator advised the court of relevant facts occurring since the December 1997 panel hearing. Respondent has paid the injured client the sums recommended by the panel. Further, respondent continues to be employed as a Salina Public Defender (a career change occurring shortly prior to the hearing before the panel). The Salina Chief Public Defender and his Deputy have filed affidavits stating they closely supervise respondent's work and have confidence in his competence and job performance. Further, respondent has sought treatment for an alcohol dependence problem. A report of his evaluation was included. In consideration of respondent's updated circumstances, the Disciplinary Administrator recommended that we suspend the imposition of discipline for a period of 18 months from

the date of this order and place respondent on probation. Respondent concurs with this recommendation. He advised the court that he believes he has found his niche in the Public Defender's Office and that he can continue to function well there.

IT IS THEREFORE ORDERED that the imposition of discipline against Mitchell B. Christians be suspended and that he be placed on probation for a period of 18 months from the date of this order.

IT IS FURTHER ORDERED:

(1)   Respondent shall continue his employment as a Salina Public Defender with his ongoing supervision by the Chief Public Defender, Mark J. Dinkel, and his Deputy, Pamela S. Sullivan, who shall report to the Disciplinary Administrator as he shall direct.

(2)   The Disciplinary Administrator shall work with respondent in developing a suitable treatment program as outlined in the evaluation report submitted for his alcohol dependency problem, and respondent shall abide by the terms thereof.

(3)   Respondent shall not violate any of the Kansas Rules of Professional Conduct during the term of his probation.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to respondent, and this court shall take whatever disciplinary actions it deems just and proper, including disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to respondent.